Filed 11/3/20; following supplemental briefing (opinion filed 5/20/20 vacated on 5/21/20)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CHANGSHA METRO GROUP CO., LTD., Plaintiff and Respondent, v. PENG XUFENG et al., Defendants and Appellants. | E073322 (Super.Ct.No. CIVDS1823603) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Donna G. Garza, Judge.  Affirmed.

Thomas Ogden for Defendants and Appellants.

Skadden, Arps, Slate, Meagher & Flom, Jack P. Dicanio, Lance A. Etcheverry, Caroline Van Ness and Julia M. Nahigian for Plaintiff and Respondent.

The trial court found Peng Xufeng and Jia Siyu (collectively, defendants) filed a frivolous anti-SLAPP motion against Changsha Metro Group Co., Ltd. (Changsha). The trial court ordered defendants to pay Changsha $61,915 for Changsha's attorney's

1

fees in opposing the anti-SLAPP motion.  (Code Civ. Proc., § 425.16, subd. (c)(1).)[1]

Defendants contend the trial court erred in awarding attorney's fees to Changsha because (1) defendants were not given a 21-day safe harbor period, and (2) Changsha requested attorney's fees in its opposition to the anti-SLAPP motion, rather than in a separate motion.  We affirm the order.

### PROCEDURAL HISTORY

Changsha sued defendants for (1) breach of fiduciary duty; (2) constructive fraud; (3) aiding and abetting; (4) unjust enrichment; and (5) a constructive trust. Defendants responded with an anti-SLAPP motion.

On March 20, 2019, Changsha filed its opposition to the anti-SLAPP motion. Changsha (1) contended defendants' motion was frivolous and solely intended to cause delay and (2) requested the trial court "award Changsha its fees associated with opposing the Motion."  Changsha explained that it "submitted evidence supporting a fee award of $88,823, to be supplemented with additional fees and costs incurred through the hearing."

On March 27, defendants replied to Changsha's opposition.  Defendants asserted their anti-SLAPP motion was not frivolous.  Alternatively, defendants contended, "If the court is inclined to believe the Anti-SLAPP is frivolous then defendants object to the short time to respond to the perfunctory way the issue is raised in the Opp.  CCP s.

---

[1]  All subsequent statutory references will be to the Code of Civil Procedure unless otherwise indicated.

128.5 governs frivolous Anti-SLAPP motions requiring reasonable opportunity to respond."

On April 3, the trial court heard defendants' anti-SLAPP motion. The trial court denied the anti-SLAPP motion, determined Changsha was entitled to an award of attorney's fees, and set a further hearing on June 4th to determine the amount of fees to award.

On May 7, Changsha filed further evidence of its attorney's fees and requested "the Court award attorney's fees in the amount of $121,823." Defendants filed a request to vacate the June 4th hearing due to a lack of jurisdiction. They asserted, "Defendants were never afforded any 21-day safe harbor by [Changsha]. [Changsha] also never raised its sanction request in a separately stated motion, instead raising it in [Changsha's] Anti-SLAPP opposition papers." Defendants concluded, "[Changsha] is entitled to nothing as s.[]128.5's mandatory procedural predicates were never complied with."

Changsha opposed defendants' motion to vacate contending that the only procedural requirements for an award of fees are notice and an opportunity to be heard, both of which were provided to defendants. Further, Changsha contended the 21-day safe harbor provision could not apply to an award of fees in an anti-SLAPP case because, in order to be entitled to fees, a plaintiff must prevail on the anti-SLAPP motion, and if the plaintiff has already prevailed, then it is necessarily too late to withdraw or correct the anti-SLAPP motion.

At the June 4th hearing, the trial court denied the motion to vacate the hearing and awarded Changsha attorney's fees "in the total amount of $61,915.00 based on the Court's prior order finding that Defendants' anti-SLAPP motion is frivolous."

## DISCUSSION

### A.   ISSUES

Defendants' appeal raises two issues:  First, when a plaintiff contends that a defendant's anti-SLAPP motion is frivolous and the plaintiff seeks an award of attorney's fees under section 425.16, is the defendant entitled to a 21-day safe harbor? Second, in the same procedural context, may the plaintiff request attorney's fees in the plaintiff's opposition to the anti-SLAPP motion, or must the plaintiff bring a separate motion requesting an award of attorney's fees?

### B.   STATUTORY INTERPRETATION

#### 1.   *PROCEDURE AND STANDARD OF REVIEW*

" ' "The interpretation of a statute is a question of law, which we review de novo." ' " (*Bright v. 99¢ Only Stores* (2010) 189 Cal.App.4th 1472, 1477.)  Our fundamental task when interpreting a statute is to determine the Legislature's intent. We begin by examining the statute's plain language.  If the plain language clearly demonstrates the Legislature's intent, then we go no further in our examination.  (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)  In assessing the Legislature's intent when the plain language is unclear, we " 'may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Ibid*.)

4

## 2.    *PLAIN LANGUAGE*

The anti-SLAPP statute's plain language states that, if an anti-SLAPP motion is frivolous, then "the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (§ 425.16, subd. (c)(1).)  Thus, the procedure of section 128.5 controls the award of attorney's fees for a frivolous anti-SLAPP motion.

Section 128.5 discusses attorney's fees in two separate areas of the statute.  The first mention of attorney's fees under section 128.5 appears in subdivisions (a), and (c), which discuss "expenses."  Section 128.5, subdivision (a) (hereinafter, subdivision (a)), authorizes the trial court to award "reasonable expenses, including attorney's fees" when an opposing party has acted frivolously.  Section 128.5, subdivision (c) (hereinafter, subdivision (c)), provides that expenses may only be awarded if notice is given "in a party's moving or responding papers" and after an "opportunity to be heard."  Thus, under subdivisions (a), and (c), attorney's fees may be awarded as expenses, and expenses may be requested in a party's responding papers.[2]

The second mention of attorney's fees in section 128.5 appears in subdivision (f) (hereinafter, subdivision (f)), which discusses "sanctions."  Subdivision (f) authorizes

---

[2] Subdivision (a) provides, "A trial court may order a party, the party's attorney, or both, to pay *the reasonable expenses, including attorney's fees*, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay."  (Italics added.)

Subdivision (c) provides, "*Expenses* pursuant to this section shall not be imposed except on notice contained in a party's moving or *responding papers* or, on the court's own motion, after notice and opportunity to be heard."  (Italics added.)

5

the trial court to impose sanctions, which can include "some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the action or tactic described in subdivision (a)." Subdivision (f) provides that sanctions may only be awarded if (1) the motion is "made separately from other motions," and (2) a 21-day safe harbor notice is served if the offending document can be withdrawn or corrected. (§ 128.5, subd. (f)(1)(A) & (B).) Thus, during a 21-day safe harbor period, the offending document may be withdrawn or corrected. If the document is withdrawn or corrected, then the motion for sanctions may not be filed with the court. (*Nutrition Distribution, LLC v. Southern SARMS, Inc.* (2018) 20 Cal.App.5th 117, 124-125 (*Nutrition Distribution*).)

The purpose of the safe harbor provision is "to conserve judicial resources otherwise spent adjudicating a sanctions motion by affording a prescribed period of time during which a party may correct or withdraw a frivolous or improper pleading or motion without any penalty. [Citation.] If the merits of the objectionable document are resolved by the court prior to the expiration of the safe harbor period, there is nothing left to correct or withdraw, thereby undermining the remedial purpose of the safe harbor provision." (*Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 593-594.)

Subdivision (f) provides that a sanctions award may only be made *after* the court "issues an order pursuant to subdivision (a)." (§ 128.5, subd. (f)(1).) The precise statutory language is: "If, after notice and a reasonable opportunity to respond, the

6

court issues an order pursuant to subdivision (a) the court may, subject to the conditions stated below, impose an appropriate sanction." (§ 128.5, subd. (f)(1).)[3]

When read separately, subdivisions (a), (c), and (f), are clear and unambiguous. However, when read together as a whole, which is the way one must interpret a statute (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 543), the statute is entirely unclear due to the inconsistencies between subdivisions (a) and (c), on the one hand and subdivision (f) on the other. We have tried a variety of ways to reconcile subdivisions

---

[3] Subdivision (f) provides, "*Sanctions* ordered pursuant to this section shall be ordered pursuant to the following conditions and procedures:

"(1) *If, after notice and a reasonable opportunity to respond, the court issues an order pursuant to subdivision* (a) *the court may, subject to the conditions stated below, impose an appropriate sanction* upon the party, the party's attorneys, or both, for an action or tactic described in subdivision (a). In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence.

"(A) A motion for sanctions under this section *shall be made separately from other motions* or requests and shall describe the specific alleged action or tactic, made in bad faith, that is frivolous or solely intended to cause unnecessary delay.

"(B) If the alleged action or tactic is the making or opposing of a written motion or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading that can be withdrawn or appropriately corrected, *a notice of motion shall be served* as provided in Section 1010, *but shall not be filed with or presented to the court, unless 21 days after service of the motion or any other period as the court may prescribe, the challenged action or tactic is not withdrawn or appropriately corrected.*" (Italics added.)

Subdivision (f) continues, "An order for sanctions pursuant to this section shall be limited to what is sufficient to deter repetition of the action or tactic or comparable action or tactic by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of *some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the action or tactic described in subdivision (a).*" (§ 128.5, subd. (f)(2), italics added.)

7

(a), and (c), with subdivision (f) in the context of requests for attorney's fees, but have concluded that it cannot be done.

A superficial reading of subdivisions (a), (c), and (f), suggests that if a party seeks compensation for its attorney's fees, then it may request attorney's fees as "expenses" in moving or responding papers, allow an opportunity to respond, and obtain an order on that request. (§ 128.5, subds. (a) & (c).) After obtaining an order granting or denying attorney's fees per subdivision (a) the party could then request a sanction of attorney's fees by (1) filing a separate motion, and (2) providing a 21-day safe harbor. (§ 128.5, subds. (f)(1)(A)-(B) & (f)(2).)

Although that interpretation comports with the plain language of subdivisions (a), (c), and (f), it effectively renders the 21-day safe harbor period meaningless because the 21-day safe harbor provision can only be triggered *after* a party has (1) requested an award of expenses; (2) provided the opposing party notice and an opportunity to be heard; and (3) obtained an order on that request. (§ 128.5, subd. (f)(1).) In practical terms, the foregoing procedure is unworkable because it would be meaningless to commence subdivision (f)'s safe harbor procedure after the trial court spent time and energy, under subdivisions (a) and (c), determining if the motion or pleading is frivolous.

We made a variety of attempts to read the plain language of the statute in a manner that would not render a portion of it meaningless. We attempted to interpret subdivision (a) as requiring a finding pertaining to frivolity—rather than an order for attorney's fees—such that the subdivision (f) prerequisite for an "order" under

8

subdivision (a) was really a prerequisite for a finding. However, having a frivolity finding as a prerequisite to triggering the subdivision (f) safe harbor provision once again presents the situation in which the safe harbor provision is rendered meaningless because the trial court is still required to review the allegedly frivolous filing and the associated arguments regarding frivolity before the safe harbor period begins.

Next, we considered if there were some way to reconcile the procedures of subdivisions (c) and (f) so as to read them as requiring the same steps. That approach also fails because the two are contradictory. For example, subdivision (f) requires a request for attorney's fees to be made in a separate motion, while subdivision (c) permits a request for attorney's fees to be made in opposition papers. If one tried to read the section as requiring both—a party must request fees in *both* its opposition papers and a separate motion—then we again circle back to the safe harbor provision being rendered meaningless. Something has to be filed to obtain the order under subdivision (a). Presumably that first filing would be the opposing papers. The trial court would then make a finding under subdivision (a). Subdivision (f)'s safe harbor is triggered *after* all of that has occurred, rendering the safe harbor meaningless.

Next, we considered the conditional nature of subdivision (f)'s safe harbor provision and whether that allowance for exceptions could somehow extract us from this procedural morass. Subdivision (f) provides, "If the alleged action or tactic is the making or opposing of a written motion or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading that can be withdrawn or appropriately corrected," then the 21-day safe harbor period must be employed. The conditional

nature of the safe harbor clause does not solve the procedural problem because no filing can meet the condition for application of the safe harbor period. After one obtains an order with a frivolity finding under subdivision (a) as the prerequisite to subdivision (f) then the filing at issue cannot be withdrawn or corrected. That means every filing avoids the safe harbor period, which renders the safe harbor provision meaningless.

We considered whether subdivisions (a), (c), and (f) could be separated—if perhaps one subdivision provided a general rule while another provided an exception to that rule. For example, if perhaps one subdivision provided a general rule applicable to a broad category of filings while another subdivision was narrower and applied only to certain motions. (See *Miller v. Superior Court* (1990) 221 Cal.App.3d 1200, 1210 [specific legislation can create an exception to general legislation].) Such an interpretation fails because an order under subdivision (a) is a prerequisite to an order under subdivision (f). (§ 128.5, subd. (f)(1).) Because of that interdependence, the subdivisions cannot be separated and treated as though they apply to separate actions.

We tried the approach of *Nutrition Distribution*, which reconciled subdivision (c) with a former version of subdivision (f). The appellate court concluded, "The plain language of former subdivision (f) mandating that a court ordering sanctions adhere to the 'standards, conditions, and procedures' set forth in section 128.7, subdivisions (c), (d), and (h) . . . appears unambiguous: All the conditions and procedures in [section 128.7,] subdivision (c)," which includes a 21-day safe harbor period, "must be imposed to the extent they are compatible with the other requirements of section 128.5." (*Nutrition Distribution*, *supra*, 20 Cal.App.5th at pp. 126-127, fn. omitted.)

10

The version of subdivision (f) discussed in *Nutrition Distribution* did not require an order under subdivision (a) before triggering subdivision (f). (*Nutrition Distribution, supra*, 20 Cal.App.5th at p. 124.) *Nutrition Distribution* did not explain the extent to which subdivision (c) and former subdivision (f) were compatible. (*Nutrition Distribution*, at pp. 126-127.)

The current version of subdivision (f), which requires an order under subdivision (a) is not compatible with subdivision (c). If one obtains an order under subdivision (a), then the safe harbor provision of subdivision (f) is rendered meaningless because it will be impossible to withdraw a motion or pleading that has already been found to be frivolous or not under subdivisions (a) and (c).

The plain language of section 128.5 creates an impossible procedure when the statute is read as a whole because there is no means by which a person could comply with the procedures set forth in the statute. One cannot obtain an order under subdivision (a) while still providing a meaningful safe harbor under subdivision (f).

Civil Code section 3531 provides, "The law never requires impossibilities." Our Supreme Court has explained that Civil Code section 3531 "is an interpretative canon for construing statutes, not a means for invalidating them. Impossibility can occasionally excuse noncompliance with a statute, but in such circumstances, the excusal constitutes *an interpretation of the statute* in accordance with the Legislature's intent, not an invalidation of the statute." (*National Shooting Sports Foundation, Inc. v. State of California* (2018) 5 Cal.5th 428, 433 (*National Shooting*).) Thus, the

11

impossible safe harbor procedure created by Code of Civil Procedure section 128.5 does not render the statute invalid.

"Impossibility, as an aid to statutory interpretation, is akin to the absurdity canon, which counsels courts to 'avoid any [statutory] construction that would produce absurd consequences.' " (*National Shooting*, *supra*, 5 Cal.5th at p. 433.)  We turn to legislative history with the hope that it will illuminate the Legislature's intent in amending section 128.5 so that we may interpret the statute in a manner that does not result in an impossible procedure.

Before turning to the legislative history, we address defendants' theory of the plain language.  In defendants' supplemental briefing, they assert, "[Defendants] believe sanctions under [section] 128.5 can only be entered under one provision.  That is, sanctions can only be entered under [section] 128.5 as a whole, as encapsulated by [section] 128.5(a)."  Defendants' theory that there is only one means of obtaining attorney's fees under section 128.5 is not persuasive because it fails to reconcile the contradictions in subdivisions (a), (c), and (f).  For example, defendants do not offer an explanation of how to apply the language:  "If, after notice and a reasonable opportunity to respond, the court issues an order pursuant to subdivision (a) the court may, subject to the conditions stated below, impose an appropriate sanction upon the party." (§ 128.5, subd. (f)(1).)

### 3. *LEGISLATIVE HISTORY*

#### a. <u>1992 Through 2014</u>

The anti-SLAPP statute was added to the Code of Civil Procedure in 1992. At that time, it provided, in relevant part: "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court may award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (Stats. 1992, ch. 726, § 2 (Sen. Bill No. 1264).) The plain language reflects that the anti-SLAPP statute has always relied upon section 128.5 to provide a procedure for awarding attorney's fees based upon a frivolous anti-SLAPP motion.

The version of section 128.5 to which it referred, and which was in effect through December 31, 2014, did not have a subdivision (f) or any similar subdivision. The pre-2015 version of subdivision (a) provided, "*Every* trial court may order a party, the party's attorney, or both to pay *any* reasonable expenses, including attorney's fees, incurred by another party as a result of *bad-faith actions or tactics* that are frivolous or solely intended to cause unnecessary delay." (Stats. 1990, ch. 887, § 1 (Sen. Bill No. 2766), italics added; Stats. 1994, ch. 1062, § 1 (Assem. Bill No. 3594).) It was similar to the current version, which provides, "A trial court may order a party, the party's attorney, or both, to pay *the* reasonable expenses, including attorney's fees, incurred by another party as a result of *actions or tactics, made in bad faith*, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a) italics added.)

The pre-2015 version of subdivision (c) was nearly identical to the current version with the exception of a minor grammatical difference: "responding papers; or

13

the court's own motion" became "responding papers or, on the court's own motion." (§ 128.5, subd. (c); Stats. 1990, ch. 887, § 1 (Sen. Bill No. 2766); Stats. 1994, ch. 1062, § 1 (Assem. Bill No. 3594).)  Thus, at the time the anti-SLAPP statute was enacted, there was not a subdivision (f) in section 128.5, and subdivisions (a) and (c) were similar to their current versions.

### b.      2015 to August 6, 2017

The version of section 128.5 that was effective from January 1, 2015, to August 6, 2017, had the same wording for subdivisions (a) and (c) as the current section 128.5 but added a subdivision (f) for the first time.  That version of subdivision (f) provided, "Any sanctions imposed pursuant to this section shall be imposed consistently with the standards, conditions, and procedures set forth in subdivisions (c), (d), and (h) of Section 128.7."  (Stats. 2014, ch. 425, § 1 (Assem. Bill No. 2494), eff. Jan. 1, 2015.)

Section 128.7 has not changed since 2006.  Section 128.7, subdivision (c), provides a procedure for awarding sanctions.  It requires a 21-day safe harbor period and that a motion for sanctions "be made separately from other motions or requests." (§ 128.7, subd. (c)(1).)  Section 128.7, subdivision (d), defines sanctions as including "some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation."  Thus, the addition of that version of subdivision (f) introduced one of the conflicts described *ante*—subdivision (c) permitting fees to be requested in opposition papers, while subdivision (f) requires a separate motion.

The 2014 amendment to section 128.5, which became effective in 2015, was accomplished by Assembly Bill No. 2494.  As the bill moved to the Assembly's

14

Appropriations Committee, it was written that the amendment "applies the same procedures and conditions for sanctions made under Section 128.7." (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 2494 (2013-2014 Reg. Sess.) as amended May 7, 2014, hearing date May 14, 2014.) When the bill had its third reading on the Assembly Floor, the analysis of the proposal provided, "This measure makes clear that it is intended to be read in harmony with the salutary cognate provisions of CCP Section 128.7." (Assem. 3d Reading Assem. Bill No. 2494 (2013-2014 Reg. Sess.) as amended May 23, 2014, hearing date May 27, 2014.) This legislative history indicates that the Legislature wanted the safe harbor procedure of section 128.7 to become part of section 128.5. However, we have found nothing in the legislative history that explains, or even acknowledges, the conflict between subdivisions (a), (c), and (f).

The anti-SLAPP statute (§ 425.16) was amended at the same time as section 128.5—effective January 1, 2015—but it was a non-substantive amendment, changing a statutory reference. (Sen. Bill No. 1304 (2013-2014 Reg. Sess.) § 17.) The last substantive amendment to section 425.16 was made in 2009. It barred attorney's fees from being awarded in certain actions, which is reflected in section 425.16, subdivision (c)(2). (Sen. Bill No. 786 (2009-2010 Reg. Sess.) § 1.)

The anti-SLAPP statute's reference to section 128.5 has been part of the anti-SLAPP statute since before subdivision (f) was added to section 128.5 bringing with it section 128.7's safe harbor and separate motion procedures. Based upon that history, one might argue that the Legislature never meant for an anti-SLAPP motion to comply with section 128.5, subdivision (f)'s requirements given that subdivision (f) did not exist

15

the last time section 425.16 was substantively amended. One may assert that we can stop here (or close to here) and conclude that the anti-SLAPP procedure for awarding attorney's fees is limited to that set forth in section 128.5, subdivisions (a) and (c). We decline to do so for two reasons. First, the anti-SLAPP statute was amended, albeit in a minor way, effective January 1, 2015—the same time section 128.5 was amended— so the Legislature considered section 425.16 at the time it amended section 128.5. Second, our Supreme Court has explained, "Consistent with the separation of powers doctrine (Cal. Const., art. III, § 3), we have previously limited ourselves to relatively minor rewriting of statutes and, even then, only resorted to that drastic tool of construction when it has been obvious that a word or number had been erroneously used or omitted." (*People v. Garcia* (1999) 21 Cal.4th 1, 14-15.) In section 425.16, the Legislature's cross-reference to section 128.5 (without reference to a particular subdivision) indicates a desire for the complete section 128.5 procedure to apply. Accordingly, we continue with our analysis of the legislative history of section 128.5 so as to hopefully decipher the legislative intent behind the procedure set forth in section 128.5.

### c.     August 7, 2017, to the Present

Section 128.5 was amended again in 2017, effective August 6, 2017. That amendment replaced subdivision (f)'s cross-reference to section 128.7 with the language of section 128.7. Also added to subdivision (f) was a prerequisite for an order under subdivision (a): "If, after notice and a reasonable opportunity to respond, the court issues an order pursuant to subdivision (a) the court may, subject to the conditions

16

stated below, impose an appropriate sanction upon the party." (§ 128.5, subd. (f)(1).) We now look at the legislative history of the 2017 amendment to determine the Legislature's intent.

The Assembly Committee on the Judiciary's Report reflects that, when considering the amendment, the Committee examined *San Diegans for Open Government v. City of San Diego* (2016) 247 Cal.App.4th 1306. (Cal. Comm. Rep. on Assem. Bill No. 984 (2017-2018 Reg. Sess.) hearing date April 25, 2017, p. 5.) The Report reads, "[T]he *San Diegans* court held that 'a party filing a sanctions motion under [section] 128.5 does not need to comply with the safe harbor waiting period described in section 128.7, subdivision (c)(1).' [Citation.] In the court's reasoning, it held that since Section 128.5 is broader, [the] safe harbor provisions of Section 128.7 'cannot be used to withdraw or appropriately correct past bad faith actions or tactics.' [Citation.] Again, while this legal analysis appears to be well-reasoned, it is inconsistent with the legislative intent that Section 128.5 should be imposed 'consistently with the standards, conditions, and procedures set forth in subdivisions (c), (d), and (h) of Section 128.7.'

"As previously noted, this Committee adopted several amendments to AB 2492[4] to ensure that Section 128.5 would be 'read in harmony with the salutary cognate

_____

**4** We infer that "2492" is an error, and the writer meant 2494, which is the number of the Assembly Bill discussed *ante*. In the report, when discussing "2492," the report provides citations to 2494. For example: "In the synopsis of this Committee's analysis, this Committee stated that AB 2492 would 'apply the revised version of section 128.5 to new cases filed *after the effective date of the measure*.' (Assembly

*[footnote continued on next page]*

17

provisions of section 128.7.'  Although this Committee's analysis of AB 2492 [*sic*] did not fully explore what this Committee meant when it specified that the 'standards, conditions, and procedures set forth in subdivisions (c), (d), and (h) of Section 128.7' should apply to Section 128.5, it is very likely that this Committee adopted these amendments out of concern for litigants who could be sanctioned by the court without having adequate procedural protections."  (Cal. Comm. Rep. on Assem. Bill No. 984 (2017-2018 Reg. Sess.) hearing date April 25, 2017, p. 6.)

The author of the 2017 amendment explained the purpose of the amendment this way:  "***Instead of referencing the standards, conditions, and procedures under Section 128.7, this bill copies the provisions (basically the standards, conditions, and procedure[s]) in Section 128.7 and inserts them into Section 128.5***.  As amended, this bill deletes the statutory reference under Section 128.5 ('standards, conditions, and procedures set forth in all of the provisions under subdivisions (c), (d), and (h) of Section 128.7') and replaces it by taking language from subdivisions (c), (d), and (h) of Section 128.7, and placing it into Section 128.5.  Granted, in order to make the language workable and grammatically consistent, the language lifted from subdivisions (c), (d), and (h) in Section 128.7 had to be slightly modified and is therefore not identical to the language in Section 128.5's subdivisions (f), (g), and (h).  However, the policy approach

---

Judiciary Committee analysis of AB 2494; April 10, 2014 [emphasis added].)"  (Cal. Comm. Rep. on Assem. Bill No. 984 (2017-2018 Reg. Sess.) hearing date April 25, 2017, p. 6.)  Further, in 2014, Assembly Bill 2492 pertained to amending Health and Safety Code section 11550, which concerns controlled substances.  (Assem. Bill 2492 (2013-2014 Reg. Sess.) § 1.)

18

is the same, but for one exception:  this bill limits the safe harbor provisions to only those alleged actions and tactics that can be withdrawn or appropriately corrected, consistent with the interpretation under *San Diegans for Open Government v. City of San Diego* (247 Cal.App.4th 1306, 1311) and common sense.  Obviously, some actions and tactics—such as oral statements or physical conduct—cannot be withdrawn or appropriately corrected."  (Cal. Comm. Rep. on Assem. Bill No. 984 (2017-2018 Reg. Sess.) hearing date April 25, 2017, p. 7.)

The Committee Report reflects the Legislature wanted the safe harbor provision to apply to all actions that could be withdrawn or corrected.  The draft of the bill that was in effect at the time the Committee Report was written included the clause requiring an order under subdivision (a) before seeking an order under subdivision (f).  (Assem. Bill No. 984 (2017-2018 Reg. Sess.) as amended April 20, 2017.)

Approximately two months later, another Committee Report was written.  The Report reflected, "This bill would provide that if, after notice and a reasonable opportunity to respond, the court issues an order pursuant to Section 128.5(a) of the Code of Civil Procedure, the court may impose an appropriate sanction upon the party, the party's attorneys, or both, for the violation."  (Cal. Comm. Rep. on Assem. Bill No. 984 (2017-2018 Reg. Sess.) hearing date June 27, 2017, p. 4.)  This reflects the Legislature was aware that an order under subdivision (a) would be needed before a party could seek sanctions under subdivision (f).

However, in that same report, it was written, "[T]his bill imports the safe harbor provisions from Section 128.7(c)(1) and (c)(2), but would only apply them '[i]f the

19

alleged action or tactic is the making or opposing of a written motion or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading that can be withdrawn or appropriately corrected.' " (Cal. Comm. Rep. on Assem. Bill No. 984 (2017-2018 Reg. Sess.) hearing date June 27, 2017, p. 7.) The Report does not reconcile how the prerequisite of an order under subdivision (a) would work with the safe harbor provision. (*Ibid.*)

Our review of the section 128.5 legislative history reveals the Legislature (1) wanted the safe harbor provision to apply broadly; (2) did not want the safe harbor provision to apply when withdrawal or correction of the allegedly frivolous document or act would be impractical; (3) did not delete subdivisions (a) and (c) when adding the safe harbor provision; and (4) was aware that an order under subdivision (a) would be a prerequisite to the safe harbor provision being triggered.

The legislative history leaves us in as much of a quandary as the plain language of the statute. We cannot simply dismiss the procedures of subdivisions (a) and (c) because the legislative history expressly reflects that an order under subdivision (a) would be required before triggering the sanctions procedure under subdivision (f). Thus, it appears the Legislature wanted the subdivision (a) prerequisite. It is unclear, however, how the Legislature intended for that prerequisite to function.

We can find no way to make section 128.5 function in the context of requests for attorney's fees. If one takes the time to comply with subdivision (a) then the safe harbor provision is effectively meaningless. If one skips subdivisions (a) and (c), then one is rendering meaningless the prerequisite for an order under subdivision (a). The

20

Supreme Court has explained, "[C]ase law recognizes that a statute may contain an implied exception for noncompliance based on impossibility where such an exception reflects a proper understanding of the legislative intent behind the statute." (*National Shooting*, *supra*, 5 Cal.5th at p. 434.) We, however, are faced with an impossibility and a lack of clear legislative intent, in that the intent appears contradictory, i.e., wanting the safe harbor provision but failing to delete the procedure created by subdivisions (a) and (c).

As explained *ante*, the impossibility presented by a statute does not give a court "a ground for invalidating a statutory mandate altogether." (*National Shooting*, *supra*, 5 Cal.5th at p. 436.) Thus, we cannot simply declare the statutory procedure impossible and invalid. After reviewing the legislative history, as unclear as that history is, we conclude that the Legislature meant for the safe harbor provision to apply as much as possible. In the Committee on the Judiciary's report, in its discussion of *San Diegans for Open Government v. City of San Diego*, *supra*, 247 Cal.App.4th 1306, it was expressed that the safe harbor provision should have expansive use. (Cal. Comm. Rep. on Assem. Bill No. 984 (2017-2018 Reg. Sess.) hearing date April 25, 2017, pp. 6-7.) The one exception was for situations in which withdrawal or correction would not be practical. Therefore, if one is attempting to obtain attorney's fees under section 128.5, then one should use the procedures of subdivision (f) (minus the prerequisite for an order under subdivision (a)) if at all possible because, from what we can decipher, that was the Legislature's intent.

To implement that intent, we conclude that if it is not possible to comply with the safe harbor and separate motion requirements of subdivision (f) when seeking attorney's fees, then one should use the procedures set forth in subdivisions (a) and (c). We derive that interpretation from the Legislature's comments that when it is not practical to apply the safe harbor provision then it need not be used. (Cal. Com. Rep. on Assem. Bill No. 984 (2017-2018 Reg. Sess.) hearing date June 27, 2017, p. 7.)

Defendants provide a minimal discussion of legislative history. Without citations to legislative history, defendants contend: Section 128.5 was amended in 2017; the Legislature knew other statutes cross-referenced section 128.5; the Legislature did not make any exceptions for compliance with section 128.5; and therefore, the procedures of section 128.5 must be followed in the context of requests for attorney's fees for frivolous anti-SLAPP motions. There is no dispute that section 128.5 controls the procedure for awarding fees associated with frivolous anti-SLAPP motions. The dispute in this case is about the internal functioning of section 128.5, i.e., how to reconcile subdivision (f) with subdivisions (a) and (c). Defendants' discussion of legislative history provides no insight into how the Legislature intended subdivision (f) to function with subdivisions (a) and (c) in the context of a request for attorney's fees.

Changsha provided a bit of legislative history and concluded that because the Legislature left subdivision (c) intact following the 2017 amendment, it must have wanted parties to use subdivision (c). We delved further into the legislative history, discussing items such as committee reports, because we hoped to gain a better understanding of what exactly the Legislature intended when amending section 128.5.

C.       APPLICATION TO THE ANTI-SLAPP STATUTE

We now apply the foregoing statutory interpretation to the anti-SLAPP statute. An anti-SLAPP motion must be filed "within 60 days of the service of the complaint." (§ 425.16, subd. (f).)  The hearing on the motion "shall be scheduled . . . not more than 30 days after the service of the motion."  (§ 425.16, subd. (f).)  Opposition to an anti-SLAPP motion is due "at least nine court days . . . before the hearing."  (§ 1005, subd. (b).)

In order to comply with the 21-day safe harbor notice, a plaintiff would need to draft and serve its subdivision (f), sanctions motion almost immediately after receiving the anti-SLAPP motion due to the 30-day clock that is running for the hearing date. Then, the plaintiff would need to draft its opposition to the anti-SLAPP motion while risking that the defendant will withdraw or correct its anti-SLAPP motion during the 21-day safe harbor period.  (§ 128.5, subd. (f)(1)(B).)

If the plaintiff does not want to risk the cost of drafting its opposition while the defendant has the 21-day option to withdraw or correct its motion, then the plaintiff might apply to continue the anti-SLAPP hearing until after the 21-day safe harbor period has elapsed (*Li v. Majestic Industry Hills LLC*, *supra*, 177 Cal.App.4th at p. 594 ["could have sought a continuance"]), but that would contradict the express purpose of the anti-SLAPP statute, which was designed "to establish an efficient screening mechanism for 'disposing of SLAPP's quickly and at minimal expense to taxpayers and litigants.' "  (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422.)

Of course, in the context of this case, we are discussing attorney's fees for frivolous motions, which means our focus is more toward anti-SLAPP motions that may be found to be frivolous. If an anti-SLAPP motion is frivolous, then the lawsuit with which the anti-SLAPP motion is associated is not a SLAPP suit. Therefore, one might think there is little to be concerned about with a request for a continuance because SLAPP suits will not be impacted by this issue. However, one could envision a situation where a plaintiff who has filed a SLAPP case, and who has been served with a non-frivolous anti-SLAPP motion, would seek to extend the litigation process by applying for a continuance of the anti-SLAPP hearing for the safe harbor period—knowing full well that the anti-SLAPP motion is not frivolous, but drawing out the litigation to cause the defendant to spend additional time defending against the suit. Allowing for continuances in anti-SLAPP proceedings so that plaintiffs can wait for the 21-day safe harbor to expire before drafting an opposition could, unfortunately, lead to problems that result in anti-SLAPP motions no longer being an efficient solution to SLAPP suits. Thus, continuances are not a reasonable solution.

Another option would be for a plaintiff to seek an order shortening the 21-day safe harbor period. (*Li v. Majestic Industry Hills LLC*, *supra*, 177 Cal.App.4th at p. 594 ["could have sought . . . an order shortening time"].) In that situation, a plaintiff who is faced with a frivolous anti-SLAPP motion would need to (1) apply for an order shortening time on the safe harbor period; (2) obtain the order shortening time from the court; (3) finish and serve the separate sanctions motion with the shortened date; (4) wait for the shortened safe harbor period to expire to see if the defendant withdraws

or amends his/her anti-SLAPP motion; and (5) if the defendant does not withdraw or amend the motion, then draft an opposition, which is due "at least nine court days . . . before the hearing." (§ 1005, subd. (b).) As an alternative to steps four and five, the plaintiff could draft the anti-SLAPP opposition during the safe harbor period, which means risking that the opposition will be unused or need to be changed because the defendant will withdraw or amend the anti-SLAPP motion.

The foregoing process could work in theory, and it would keep with the spirit of resolving anti-SLAPP issues quickly. However, it means that an order shortening time would always be necessary. A plaintiff would need to know that, in addition to following the procedures in subdivision (f) (minus the prerequisite for a subdivision (a) order), she/he also needs to obtain an order shortening time. It also means the trial judge is effectively required to grant the request for an order shortening time, despite any opposition from the defendant, because that is the only way to make the process work while satisfying the purpose of the anti-SLAPP statute. In practice, such a procedure is too limiting on the trial court because it takes away the court's discretion, and it is too cumbersome for the parties. It is not realistic to expect that plaintiffs will always know to seek, and trial courts will always know to grant (despite any opposition from the defendant), an order shortening time.

For all these reasons, subdivision (f) does not work with the anti-SLAPP statute. Therefore, we conclude the proper procedure for the trial court to follow in regard to a

25

request for attorney's fees related to an anti-SLAPP motion is the procedure set forth in subdivisions (a) and (c).**5**

Defendants assert that if we conclude the procedures of subdivision (f) are inapplicable to requests for anti-SLAPP attorney's fees, then we will contradict the holding of *Moofly Productions, LLC v. Favilla* (2018) 24 Cal.App.5th 993. In *Moofly*, the "defendants contend[ed] that when imposing sanctions under section 1008, subdivision (d), a court need not comply with the requirements of section 128.7, including the 21-day safe harbor period." (*Id.* at p. 997.) The appellate court "conclude[d] that the requirements of section 128.7 do apply to sanctions imposed under section 1008, subdivision (d)." (*Ibid.*)

Within its analysis, the appellate court discussed the anti-SLAPP statute. The court wrote, "This interpretation is consistent with the one courts have applied in analogous cases involving the award of attorney fees and costs under the anti-SLAPP statute, section 425.16. The anti-SLAPP statute requires courts to 'award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [s]ection 128.5.' (§ 425.16, subd. (c)(1).) Courts have concluded that '[t]he "reference to section 128.5 in section 425.16, subdivision (c) means a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney

---

**5** We hope the Legislature will reexamine section 425.16 and/or section 128.5 and clarify how it intended section 425.16 to interact with section 128.5. We note there is currently a bill pending to amend section 425.16. The bill proposes the deletion of the requirement to transmit anti-SLAPP filings to the Judicial Council and deletion of the Judicial Council's duty to keep records of the transmitted filings (§ 425.16, subd. (j)). (Assem. Bill No. 2129 (2019-2020 Reg. Sess.) § 1.)

fees under the anti-SLAPP statute." ' (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 199, 10 Cal.Rptr.3d 154.)" (*Moofly Productions, LLC v. Favilla*, *supra*, 24 Cal.App.5th at pp. 997-998.)

We do not find defendants' reliance on *Moofly* to be persuasive because defendants do not include an explanation of how the 21-day safe harbor procedure can function within the anti-SLAPP deadlines. Because defendants fail to offer practical insight into how subdivision (f) can function with section 425.16, we find defendants' reliance on *Moofly* to be unpersuasive.

Defendants contend that if we conclude subdivision (f) does not apply to attorney's fees associated with frivolous anti-SLAPP motions, then we will be contradicting *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, which defendants contend is "this Court's own case law." This court did not issue the opinion in *Decker*. In *Decker*, the Fourth District, Division Three, Court wrote, "[W]e believe the reference to section 128.5 in section 425.16, subdivision (c) means a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute." (*Id.* at p. 1392; see also *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 817 [quoting a portion of the foregoing *Decker* quote].) Notably, at the time of *Decker*, subdivision (f) was not part of section 128.5. The *Decker* court wrote, "The usual remedy when a sanctions order fails to comply with subdivision (c) of section 128.5 is remand." (*Decker*, at p. 1392.) So, the *Decker* court was discussing the application of subdivision (c) in the context of an anti-SLAPP motion.

We understand and appreciate that section 128.5 controls the procedure for awarding fees associated with frivolous anti-SLAPP motions, as stated in *Decker*, and as stated by this court *ante* in our plain language analysis. The problem we confront with defendants' reliance on *Decker* is the lack of explanation of how subdivision (f) and section 425.16 can be reconciled. Defendants' failure to provide practical insight into how subdivision (f) and section 425.16 can function together leaves us unpersuaded that subdivision (f) applies to requests for anti-SLAPP attorney's fees.

Defendants assert that if we conclude strict compliance with the safe harbor provision is not required in the anti-SLAPP context, then we are "legislating into s.128.5 an exception to strict safe harbor compliance." Defendants repeatedly assert that section 128.5 provides the procedure for an award of attorney's fees associated with a frivolous anti-SLAPP motion; and they contend that procedure involves subdivision (f). However, defendants fail to explain how the procedures of subdivision (f) would work in practice in the anti-SLAPP context.

For example, defendants complain of the timeline in the instant case. Defendants write, "The only time period [defendants] could've taken action to withdraw or correct the Anti-SLAPP was the time between service of [Changsha's] opposition on March 20, 2019, that requested sanctions, and the April 3, 2019, hearing. That's 14 days, and seven days less than what 128.5 guarantees." Defendants do not explain how that anti-SLAPP filing timeline can be reconciled with the 21-day safe harbor period. Defendants simply conclude they should have been given 21 days. Defendants do not

delve into the conflicts that would be created between the filing deadlines under section 425.16 and the 21-day safe harbor period.

Due to the lack of practical insight into how one could make subdivision (f) function in an anti-SLAPP context and due to a lack of meaningful analysis of legislative history, we find defendants' criticism to be unpersuasive. Accordingly, as set forth *ante*, the proper procedure for a trial court to follow in regard to a request for attorney's fees related to a frivolous anti-SLAPP motion is the procedure set forth in subdivisions (a) and (c).

D.     APPLICATION TO THE RECORD IN THIS CASE

We now examine the record in the instant case to determine whether there was compliance with the procedures of subdivisions (a) and (c).

Subdivision (a) permits a trial court to order a party "to pay the reasonable expenses, including attorney's fees, incurred by another party." Subdivision (c) permits a request for attorney's fees to be made in "responding papers," and requires an "opportunity to be heard."

Changsha requested an award of attorney's fees in its opposition to the anti-SLAPP motion. The request was proper because it was presented in Changsha's "responding papers." (§ 128.5, subd. (c).) Defendants were given an opportunity to be heard regarding the request for attorney's fees (1) in their reply to Changsha's opposition; (2) at the hearing on April 3, 2019; (3) in their motion to vacate, in which they argued "s.[]128.5's mandatory procedural predicates were never complied with"; and (4) at the hearing on June 4, 2019.

Because the request was properly submitted in Changsha's opposition and defendants were given an opportunity to be heard, we conclude the trial court followed the proper procedure in awarding attorney's fees to Changsha.  (§ 128.5, subds. (a) & (c).)

## DISPOSITION

The order is affirmed.  Respondents are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

CERTIFIED FOR PUBLICATION

MILLER
                                                                    J.

We concur:

RAMIREZ
                    P. J.

CODRINGTON
                    J.