Filed 6/7/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CITY OF SAN DIEGO et al., <br><br> Defendants and Appellants. | D068421 <br><br><br> (Super. Ct. No. <br> 37-2014-00000217-CU-MC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed in part, reversed in part and remanded for further proceedings.

Jan I. Goldsmith, City Attorney, David J. Karlin, Chief Deputy City Attorney, and Walter C. Chung, Deputy City Attorney, for Defendants and Appellants.

Briggs Law Corporation, Cory J. Briggs and Kelly E. Mourning for Plaintiff and Respondent.

Effective January 1, 2015, the Legislature revised and revived Code of Civil Procedure section 128.5,[1] which provides statutory authority for an award of sanctions. (Stats. 2014, ch. 425 (Assem. Bill No. 2494), §§ 1-2, pp. 3295-3297.) We conclude the current version of section 128.5 applies to any case pending as of its effective date; a party filing a sanctions motion under section 128.5 does not need to comply with section 128.7, subdivision (c)(1) (the safe harbor waiting period); and (3) the legal standard in evaluating a request for sanctions under section 128.5 is whether the challenged conduct was objectively unreasonable. We reverse the trial court's order denying sanctions and remand the matter for further proceedings in conformity with this opinion.

We also address the prevailing party determination under the California Public Records Act (Gov. Code, § 6250 et seq. (the Act)). We affirm the trial court's order finding plaintiff to be the prevailing party and awarding it attorney fees and costs.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, San Diegans for Open Government (SDOG), describes itself as a nonprofit organization acting as a government "watchdog" to ensure public agencies comply with all applicable laws aimed at promoting transparency and accountability in government. Defendants are the City of San Diego (City) and Jan L. Goldsmith, the San Diego City Attorney (together defendants). SDOG submitted a public records request to City for all e-mail communications pertaining to City's official business sent to or from

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

2

Goldsmith's personal e-mail account during certain time periods. City refused to produce any e-mail communications, stating they did not qualify as public records. SDOG filed this verified action after confirming City would not produce any responsive records. The operative pleading claimed a violation of the Act and sought declaratory relief against defendants to compel disclosure of the e-mails. SDOG also alleged a cause of action under section 526a for taxpayer waste.

SDOG ultimately dismissed the waste cause of action with prejudice. The trial court issued a judgment in favor of SDOG on its claim under the Act and granted SDOG declaratory relief against City. Third party, League of California Cities, subsequently petitioned this court for a writ of mandate under the Act challenging the trial court's order. We granted the petition and remanded the matter for further proceedings. (*League of California Cities v. Superior Court* (2015) 241 Cal.App.4th 976 (the prior action).) On remand, the trial court determined SDOG to be the prevailing party under the Act and awarded it attorney fees and costs. The court also denied City's request for sanctions under section 128.5. City timely appealed both orders.

DISCUSSION

I

*Sanctions*

A. Background

Defendants sought sanctions on the ground SDOG had no evidence to support its waste cause of action, SDOG's sole piece of evidence was invented, and soon after filing the claim SDOG started a publicity campaign against Goldsmith to wrongfully leverage a

3

settlement.  SDOG opposed the motion, arguing it was procedurally defective and SDOG's counsel believed in good faith the waste cause of action had merit.  The trial court denied the motion finding the waste "cause of action was not completely devoid of legal merit" because the claim survived demurrer; defendants "provide[d] no evidence demonstrating that a useless expenditure of public funds did not actually take place"; and defendants speculated, but provided no evidence, SDOG's counsel acted in bad faith.

B.  Analysis

1. *Procedural Issues*

SDOG contends we should affirm the trial court's order denying City's request for sanctions because the motion was procedurally defective.  SDOG argues section 128.5 does not apply to this action because it was not in effect when SDOG filed the operative pleading.  SDOG also argued below that defendants did not comply with the safe harbor waiting period of section 128.7 as required by section 128.5, subdivision (f), but SDOG did not pursue this issue on appeal.  Under Government Code section 68081, we requested additional briefing from the parties on the proper interpretation of section 128.5, subdivision (f), and how this impacted defendants' sanctions motion.  The parties submitted additional briefing as requested.

Issues of statutory interpretation present a question of law subject to de novo review on appeal.  (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 76-77.)  "Our fundamental task involving statutory interpretation ' "is to determine the Legislature's intent so as to effectuate the law's purpose."  [Citation.]  "We begin with the plain language of the statute, affording the words of the provision their ordinary and

4

usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." [Citations.]  The plain meaning controls if there is no ambiguity in the statutory language.  [Citation.]' [Citations.]  'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.]  "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.]  ' "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " (*Simplon Ballpark, LLC v. Scull* (2015) 235 Cal.App.4th 660, 667.)

In 1981, the Legislature enacted former section 128.5 to provide statutory authority for an award of sanctions.  (*Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 164.)  Former section 128.5 applied only to complaints filed, or proceedings initiated, on or before December 31, 1994.  (*Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 819.)  In 1994, the Legislature essentially suspended former section 128.5 when it enacted section 128.7, which provided statutory authorization for sanctions in actions filed on or after January 1, 1995.  (§ 128.7, subd. (i); *Olmstead*, at p. 816.)  Section 128.7 is much narrower and applies solely to misconduct in the filing or advocacy of groundless claims made in signed pleadings and other papers. (§ 128.7, subd. (b).)  Section 128.7 also imposes a lower threshold for sanctions as the movant need not show subjective bad faith, but instead show the

5

challenged conduct was " 'objectively unreasonable.' " (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167.)

In 2014, the Legislature proposed revising and reviving former section 128.5 "to provide an additional tool by which courts may potentially sanction bad faith actions or tactics." (Assem. Com. on Judiciary, analysis of Assem. Bill No. 2494 (2013-2014 Reg. Sess.) as amended April 10, 2014, p. 1.) The Legislature enacted the current version of section 128.5, effective January 1, 2015. (See Cal. Const., art. IV, § 8, subd. (c)(1) [absent urgency clause, a statute enacted at a regular session of the Legislature becomes effective on January 1 of the following year].) The substantive provisions of former section 128.5 and section 128.5 are virtually identical. (Compare § 128.5, subds. (a), (b), (c) & (d) and former § 128.5, subds. (a), (b), (c) & (d).) The current version of section 128.5 contains three additional provisions: (1) stating it does not apply to discovery disclosures and motions (*id.,* subd. (e)); (2) providing any sanctions imposed must be "imposed consistently with the standards, conditions, and procedures set forth in subdivisions (c), (d) and (h)" of section 128.7 (§ 128.5, subd. (f)); and (3) imposing reporting obligations (*id.,* subds. (e), (f) & (h)). These three additional provisions will be repealed on January 1, 2018, unless a later-enacted statute deletes or extends that date. (§ 128.5, subd. (i); see Stats. 2014, ch. 425, §§ 1, p. 3295.)

SDOG contends section 128.5 does not apply because SDOG filed this action and dismissed its waste cause of action in 2014, before the effective date of the statute. SDOG asserts applying section 128.5 under these circumstances amounts to improper retroactive application of the statute to past conduct.

6

Former section 128.5 applied only to complaints filed, or proceedings initiated, on or before December 31, 1994.  (Former § 128.5, subd. (b)(1).)  When enacted in 1994, section 128.7 expressly provided it applied "to a complaint or petition filed on or after January 1, 1995, and any other pleading, written notice of motion, or other similar paper filed in that matter."  (§ 128.7, subd. (i).)  The current version of section 128.5 contains no date restriction, suggesting it should apply to any action pending at the time of its enactment.  The enrolled bill report for section 128.5 supports this interpretation.  (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19 [the California Supreme Court has "routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent."].)  The enrolled bill report for section 128.5 explained the "bill would delete the December 31, 1994, date limitation on a trial court's authorization to award reasonable expenses incurred as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay, thus making both of the provisions described above applicable commencing January1, 2015."  (Governor's Office, Enrolled Bill Rep. on Assem. Bill No. 2494 (2013-2014 Reg. Sess.), Aug. 29, 2014, p. 2.)  We conclude section 128.5 applies to any action pending as of January 1, 2015.  "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."  (§ 1049.)

In arguing section 128.5 should not apply, SDOG relies on the "well-established presumption that statutes apply prospectively in the absence of a clearly expressed contrary intent . . . ."  (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1218.)

7

Assuming, for the sake of argument, the Legislature did not make its intent clear, we examine SDOG's contention.

A statute establishing rules for the conduct of pending litigation without changing the legal consequences of past conduct is not retroactive merely because it draws on facts existing prior to its enactment; rather, such statutes are actually prospective in nature because they relate to the procedure to be followed in the future. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 231; see also *Republic Corp. v. Superior Court* (1984) 160 Cal.App.3d 1253, 1257; *Olson v. Hickman* (1972) 25 Cal.App.3d 920, 922.) No litigant has a vested right in any matter of procedure. (*National Auto. & Cas. Ins. Co. v. Downey* (1950) 98 Cal.App.2d 586, 591.)

Statutory enactments allowing an award of attorney fees made after the occurrence of an event and during the pendency of legal proceedings are properly characterized "as an ancillary provision, creating no new cause of action. It is procedural only. A lawsuit is governed by a change in procedural rules made during its pendency, and the suit is pending until its final determination on appeal." (*Olson v. Hickman*, *supra*, 25 Cal.App.3d at p. 922.) A motion for sanctions, like a motion for attorney fees, is a matter collateral to the underlying litigation. (*San Bernardino Community Hospital v. Meeks* (1986) 187 Cal.App.3d 457, 462.) Nothing in section 128.5 impacts the rights or liabilities of the parties regarding the claims at issue in SDOG's complaint. Rather, section 128.5 operates prospectively because it is a procedural statute governing the conduct of proceedings following its enactment to determine the legal significance of past events, i.e., whether these past events make the moving party eligible for sanctions.

8

SDOG next contends defendants did not comply with the safe harbor waiting period of section 128.7 as required by section 128.5, subdivision (f), which states: "[a]ny sanctions imposed pursuant to this section shall be imposed consistently with the standards, conditions, and procedures set forth in subdivisions (c), (d), and (h) of Section 128.7." Before addressing this question we briefly review each subdivision of section 128.7 mentioned in section 128.5.

Section 128.7, subdivision (h), provides a motion for sanctions brought for an improper purpose is itself subject to a motion for sanctions. Section 128.7, subdivision (d), authorizes monetary and nonmonetary sanctions "limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." Monetary sanctions can be fines payable to the court or an award to the moving party for "reasonable attorney fees and other expenses incurred as a direct result of the violation." (§ 128.7, subd. (d).) Section 128.7, subdivision (c), provides sanctions may be awarded against attorneys, law firms, or parties. Subdivision (c)(1) describes a two-step procedure for a section 128.7 sanction motion. The moving party serves the sanctions motion on the offending party without filing it. The opposing party then has 21 days to withdraw or correct the improper pleading and avoid sanctions (the safe harbor waiting period). At the end of the waiting period, if the pleading is not withdrawn or appropriately corrected, the moving party may then file the motion. (§ 128.7, subd. (c)(1); *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698-699.) Section 128.7, subdivision (c)(2), allows a court, on its own motion, to "enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show

9

cause why it has not violated subdivision (b), unless, within 21 days of service of the order to show cause, the challenged paper, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected."

We are not persuaded by SDOG's contention that a party seeking sanctions under section 128.5 must comply with the safe harbor waiting period in section 128.7, subdivision (c)(1). SDOG's argument requires us to interpret the language of section 128.5. Section 128.5, subdivision (f), requires sanctions be "*imposed consistently with the standards, conditions, and procedures set forth in subdivisions (c), (d), and (h) of Section 128.7.*" (Italics added.) The plain language of the statute specifies sanctions are to be imposed consistently with section 128.7, subdivision (c), pertaining to who can be sanctioned and whether the party seeking sanctions exercised due diligence. The Legislature did not specify motions under section 128.5 needed to be imposed consistently with the safe harbor provisions of section 128.7, subdivisions (c)(1) and (c)(2).

To the extent section 128.5 can be considered ambiguous regarding adoption of the safe harbor provisions of section 128.7, subdivisions (c)(1) and (c)(2), our review of the legislative history reveals no mention of the section 128.7 safe harbor waiting period. It is inconceivable the Legislature intended to incorporate by reference a prerequisite filing requirement without mentioning the requirement. Finally, section 128.7 is limited to misconduct in the filing or advocacy of groundless claims made in signed pleadings and other papers. (§ 128.7, subd. (b).) The purpose of the safe harbor waiting period contained in section 128.7 is to allow a party to "avoid sanctions by withdrawing or

otherwise appropriately correcting the offending paper, claim, defense, contention, allegation, or denial." (*Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 132.) Section 128.5 is not limited to misconduct made in signed pleadings and other papers. (§ 128.5, subd. (a).) As a practical matter, requiring a party to comply with the safe harbor waiting period of section 128.7 before filing a sanctions motion under section 128.5 makes little sense as the waiting period cannot be used to "withdraw or appropriately correct[]" past bad-faith actions or tactics. (§ 128.7, subd. (c)(1).)

We conclude a party filing a sanctions motion under section 128.5 does not need to comply with the safe harbor waiting period described in section 128.7, subdivision (c)(1).

2. *Legal Standard*

Defendants contend the trial court applied an improper legal standard when it denied the sanctions motion.

Both the former and current versions of section 128.5 give a trial court discretion to award "reasonable expenses, including attorney fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a); former § 128.5, subd. (a).) " 'Actions or tactics' " include the making or opposing of motions or the filing and service of a complaint or cross-complaint. (Former § 128.5, subd. (b)(1).) The current version of section 128.5 broadened the definition of an action or tactic to include the filing and service of an answer or other responsive pleading. (§ 128.5, subd.(b)(1).) " 'Frivolous'

11

means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party.' " (§ 128.5, subd. (b)(2); former § 128.5, subd.(b)(2).)

Former section 128.5 is silent on whether an objective or subjective standard applies to determine whether actions or tactics are frivolous or solely intended to cause unnecessary delay. The subjective standard evaluates the motives of a party or counsel and the objective standard looks at the merits from a reasonable person's perspective. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649.) Many courts interpreting former section 128.5 required a showing of subjective bad faith in addition to frivolousness. (*Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1346 [listing cases].)

Section 128.5 is similarly silent on whether an objective or subjective standard applies. The question presented is whether the Legislature intended section 128.5 to be interpreted similar to *former* section 128.5. Our review of the legislative history shows one purpose of section 128.5 was to eliminate the subjective standard and impose an objective standard.

The author of the bill explained the bar for the imposition of sanctions under section 128.5 was considered to be "too high because the statute had been interpreted to require both an objective standard that the act was without merit and a subjective bad-faith motive, which was difficult to prove." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2494 (2013-2014 Reg. Sess.) as amended April 10, 2014, p. 4.) The enactment of section 128.7 imposed a lower threshold by only requiring the attorney conduct be objectively unreasonable, but its scope is limited to the filing of frivolous

12

pleadings.  (§ 128.7.)  Thus, courts have lost an important tool to discourage "bad faith actions that can materially harm the other party or the fairness of a trial."  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2494 (2013-2014 Reg. Sess.) as amended April 10, 2014, p. 4.)  A later bill analysis shows the purpose of the current version of section 128.5 was to impose the same conditions for sanctions made under section 128.7.  (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 2494 (2013-2014 Reg. Sess.) as amended May 7, 2014, p. 2.)

Because the Legislature intended the conditions for sanctions under the current version of section 128.5 mirror section 128.7, we conclude the objective standard used to evaluate section 128.7 sanctions motions applies to section 128.5.  (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 82; *Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921 [sanctions under § 128.7 are evaluated under an objective standard].)  Thus, the trial court erred by concluding the lack of evidence of subjective bad faith by SDOG or its counsel required denial of the sanctions motion.  Although the objective standard of proof is easier to satisfy, the Legislature intended to "retain the extremely high proof required for such awards" with its applicability lying with "truly egregious behaviors."  (Senate Judiciary Com., Analysis of Assem. Bill No. 2494 (2013-2014 Reg. Sess.) as amended June 16, 2014, p. 5; cf. *In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 650-651 [addressing former § 128.5].)

The trial court also erred in determining the waste cause of action had legal merit because the claim survived demurrer.  The issue on demurrer is whether a claim alleges facts sufficient to state a cause of action, assuming the truth of all properly pleaded

material facts.  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  The issue on a sanctions motion is whether the claim was "frivolous" meaning "totally and completely without merit or for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2); former § 128.5, subd.(b)(2).)  An objective reasonable attorney standard applies to this determination.  (*People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1070 [addressing former § 128.5]; *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 12 [same].)  Whether a claim is meritless or for the sole purpose of harassment must be evaluated by examining whether the factual allegations of the claim had evidentiary support.  (*580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 22 [addressing former § 128.5].)  The order overruling the demurrer to the waste cause of action is not relevant to this issue.

Defendants also contend the trial court improperly "flipped the burden of proof" by requiring them to produce "evidence demonstrating that a useless expenditure of public funds did not actually take place."  The parties have not cited any cases addressing the burden of proof on a sanctions motion.  Our independent research reveals at least one court concluded that after the moving party on a sanctions motion asserts an action lacks legal support, the burden shifts to the other party to cite authority for the action. (*Weisman v. Bower* (1987) 193 Cal.App.3d 1231, 1236, fn. 6.)

As a general matter, "[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."  (Evid. Code, §§ 500, 550, subd. (b) ["The burden of producing evidence as to a particular fact is initially on the party with the

14

burden of proof as to that fact."].)  Both the current and former versions of section 128.5 do not provide otherwise.  A party seeking sanctions may rely on factually devoid discovery responses by the party opposing the sanctions motion to raise a reasonable inference the party opposing the sanctions motion lacks facts supporting its claims.  (Cf. *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 589-590 [a moving defendant may rely on factually devoid discovery responses to shift the burden of proof on summary judgment].)  Once the party with the burden of proof as to a particular fact produces evidence sufficient to make its prima facie case, the burden of producing evidence then shifts to the other party to refute the prima facie case.  (Evid. Code, § 110; see generally *Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1667-1668.)  Despite this burden shifting, the ultimate burden of providing sanctionable conduct remains with the moving party.  (Evid. Code, § 115; cf. *Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 144-145.)

The matter is remanded to the trial court to reevaluate the sanctions motion under the proper legal standard of objective reasonableness.  On remand, the trial court must first evaluate whether the party seeking sanctions has tendered some evidence showing potentially sanctionable conduct.  If the party seeking sanctions satisfies its burden, the burden of producing evidence shifts to the party opposing the sanctions motion to refute the moving party's prima facie case.  The trial court has the discretion to consider further briefing and evidence before ruling on the motion.  If the trial court determines sanctions are appropriate, it must determine the type and amount of sanctions and whether to

15

impose sanctions on counsel, the client or both. (Cf. Code Civ. Proc., § 128.7, subds. (c) & (d).) We express no opinion on the merits of the sanctions motion.

As a housekeeping matter we note a party filing a motion for sanctions under the current version of section 128.5 is required to e-mail the California Research Bureau of the California State Library "a copy of the endorsed, filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying the motion. The party shall also indicate whether a motion for sanctions was made pursuant to Section 128.7." (§ 128.5, subd. (h)(1).) The record on appeal does not show City complied with these reporting requirements.

## II

### *Attorney Fees*

A. Background

SDOG submitted a public records request to City for all e-mail communications pertaining to City's official business sent to or from Goldsmith's personal e-mail account during certain periods of time. City refused to produce any e-mail communications stating the e-mails in Goldsmith's personal account were not "owned, used, prepared or *retained* by . . . City" and did not qualify as public records. (Italics added.)

SDOG filed this verified action after confirming City would not produce any responsive records. SDOG's pleading noted a newspaper article in which Goldsmith stated he receives e-mails pertaining to City business on his personal account and his practice is to forward these e-mails to his City e-mail account. After reading the

16

complaint, City claimed it realized for the first time that SDOG sought e-mails stored in City's computer system. City conducted a search for responsive e-mails retained in its system and produced over 900 pages of e-mails.

The trial court entered a judgment in favor of SDOG on its claim under the Act and granted SDOG declaratory relief against City. The court found City did not produce documents stored in its e-mail system because it improperly narrowed the request to e-mail messages maintained on a private server, and should have sought clarification or attempted to provide a partial response. The trial court later granted SDOG's request for attorney fees as the prevailing party under the Act finding City disclosed public records as a result of the action; and could have avoided litigation had it not improperly narrowed the request, but instead sought clarification.

B. Analysis

City contends the trial court erroneously found SDOG to be the prevailing party because the lawsuit did not cause it to disclose the e-mails and, after the trial court ruled on its claimed privilege, it produced only one insignificant e-mail with the fate of other e-mails at issue in the prior action still undecided. The record supports the trial court's prevailing party determination.

The Act states " '[p]ublic records' " include "any writing containing information relating to the conduct of the public's business prepared, owned, used, or *retained* by any state or local agency regardless of physical form or characteristics." (Gov. Code, § 6252, subd. (e), italics added.) A public agency has a duty to make "a reasonable effort to elicit additional clarifying information from the requester that will help identify the record or

17

records." (Gov. Code, § 6253.1, subd. (b).) In a proceeding under the Act the court is required to "award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section." (Gov. Code, § 6259, subd. (d).)

A plaintiff prevails under the Act when it " 'files an action which results in defendant releasing a copy of a previously withheld document.' " (*Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381, 1391.) "A plaintiff is considered the prevailing party if [the] lawsuit motivated defendants to provide the primary relief sought or activated them to modify their behavior [citation], or if the litigation substantially contributed to or was demonstrably influential in setting in motion the process which eventually achieved the desired result." (*Belth v. Garamendi* (1991) 232 Cal.App.3d 896, 902.) We review a trial court's determination of whether a litigant is a prevailing party for abuse of discretion, deferring to any factual findings made by the court that are supported by substantial evidence. (*Garcia v. Bellflower Unified School Dist. Governing Bd.* (2013) 220 Cal.App.4th 1058, 1064.) We accept the trial court's resolution of credibility and conflicting substantial evidence, and its choice of possible reasonable inferences that can be drawn from the evidence. (*Galbiso v. Orosi Public Utility Dist.* (2008) 167 Cal.App.4th 1063, 1078.)

SDOG's request sought e-mails pertaining to City's official business sent to or from Goldsmith's personal e-mail account. When City received the request, four City attorneys reviewed it and concluded it sought only e-mails stored and maintained in Goldsmith's private e-mail account and not e-mails saved to City's e-mail account. In

18

declarations submitted to the court, City's attorneys explained they came to this conclusion based on the wording of prior requests under the Act submitted by SDOG's counsel that sought e-mails regardless of whether the account was public or private. City attorneys conceded they were aware private e-mails stored on City servers are considered to be public records.

City refused to produce any e-mail communications, stating the e-mails in Goldsmith's personal account were not "owned, used, prepared or *retained* by . . . City" and did not qualify as public records. (Italics added.) City complains SDOG should have expressly stated it sought private e-mails stored within City's system and, had SDOG done so, City would have produced the e-mails to the extent they were not otherwise privileged or exempt. City's claim it did not understand the request sought e-mails stored in its computer system rings hollow. City knew private e-mails stored on its servers are considered to be public records. Yet City declined to produce any documents claiming it did not "retain[]" them. It appears City claimed it did not retain the requested documents without verifying the veracity of this statement. This evidence suggests the filing of the action motivated City to actually look for and produce the private e-mails pertaining to City business stored in its system. This evidence also supports the trial court's finding City improperly narrowed the request rather than seek clarification as it was obligated to do. (Gov. Code, § 6253.1, subd. (b).) On this record, the trial court did not abuse its discretion in finding SDOG to be the prevailing party and awarding SDOG its attorney fees and costs.

19

## DISPOSITION

The order granting SDOG its attorney fees and costs is affirmed.  The order denying City's motion for sanctions is reversed and the matter is remanded for further proceedings in conformity with this opinion.  The parties are to bear their own costs for this appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


McDONALD, J.

WE CONCUR:


HALLER, Acting P. J.


IRION, J.