Filed 7/18/23; certified for publication 8/8/23 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MATT VALENTI, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF SAN DIEGO, <br><br> Defendant and Respondent. | D080133 <br><br><br> (Super. Ct. No. 37-2017-00044069-CU-MC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge. Affirmed.

Briggs Law Corporation, Cory J. Briggs and Nora Pasin for Plaintiff and Appellant.

Mara W. Elliott, City Attorney, M. Travis Phelps, Assistant City Attorney, and Tyler L. Krentz, Deputy City Attorney, for Defendant and Respondent.

INTRODUCTION

This is an action under the California Public Records Act (PRA)[1] filed by Matt Valenti against the City of San Diego (City). Valenti appeals an order denying his postjudgment motion for prevailing party attorney fees against the City and granting the City's motion to strike his cost memorandum. He contends there is not sufficient evidence to support the trial court's finding that his lawsuit was not a "sufficiently 'substantial cause' " of the City's production of public records to merit an award of fees and costs. We conclude the record does contain substantial evidence supporting the court's finding, so we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Valenti's Requests for Public Records from the City*

On July 28, 2017, Valenti submitted a request for public records to the City (first request) using the City's online web portal for public records requests. The City processed such requests using a document management system called NextRequest.

Valenti requested: "All records between January 1, 2016 and July 28, 2017 regarding: [¶] The San Diego Junior Theatre [(Junior Theatre)]"; "Deputy City Attorney Catherine Morrison and [the Junior Theatre]";

---

[1] The PRA was previously codified as Government Code section 6250 et seq., and was recently recodified and reorganized as Government Code section 7921.000 et seq., without substantive change. (Stats. 2021, ch. 614, § 2; see Gov. Code § 7920.100 [stating nothing in the recodification of the PRA "is intended to substantively change the law" and the "act is intended to be entirely nonsubstantive in effect"].) Valenti brought his action under the PRA as it was formerly codified. We refer to the relevant provisions of the PRA throughout this opinion using their current numbers. Further statutory references are to the Government Code unless otherwise stated.

2

"Deputy City Attorney Joan Dawson and [the Junior Theatre]"; any of seven other individuals; as well as two attorneys and their respective law firms. The people named in this request were members of the board of the Junior Theatre.

Valenti submitted his request after a drama teacher from the Junior Theatre was sentenced to prison for committing two counts of acts of sexual misconduct with an underaged theater student. He alleged in his subsequent lawsuit that he was attempting to "find out what officials knew and when they knew it."

The City processed Valenti's first request as NextRequest No. 17-1985. On September 14, 2017, the City produced some responsive public records but withheld others as privileged. The same day, the City closed the request and sent Valenti an electronic message stating, "There are no additional responsive documents." That evening, Valenti responded with a lengthy message objecting to the City's decision to close the request and asserting, "[T]here are numerous documents known to me . . . which you have failed to produce[.]" On September 15, a City staff member sent Valenti a response that stated, in part, "Thank you for your email. If you are aware of other records that are responsive, please let us know what they are." No response from Valenti to the staff member's message appears in the documentation associated with the City's processing of NextRequest No. 17-1985.

On September 19, 2017, Valenti submitted a second public records request to the City (second request) through the online web portal. He requested 13 categories of records, including: agreements between the City and the Junior Theatre; incidents of suspected child abuse; employee information; policies and procedures; board records; legal settlements; public meeting recordings; and reports made by the Junior Theatre to the police.

3

The date range associated with most of these requests was January 1, 2012 to September 19, 2017, a wider date range than the date range associated with his first request.

The City processed Valenti's second request as NextRequest No. 17-2567. It responded by providing responsive records on a rolling basis as permitted by the PRA (see § 7922.535), while withholding those records it claimed were exempt from disclosure.

## II.

### *Valenti's Lawsuit Against the City*

On November 18, 2017, before the City closed its response to the second request, Valenti filed the instant lawsuit. Valenti alleged the City had closed its file on his first *and* second requests without disclosing all responsive public records that were not exempt from disclosure. In a first cause of action for "Violation of Open Government Laws," he asserted the City had thereby violated his right of access to public information. (Boldface omitted.) He sought a writ of mandate and an injunction ordering the City to comply with the PRA by fully responding to his first and second requests. In a second cause of action for declaratory relief, he asked the court to issue an order declaring that the City's failure to disclose all public records responsive to his first and second requests violated, among other provisions, the PRA.

In September and October 2018, the City produced 4,006 pages of documents in response to discovery.

In July 2019, the trial court issued a minute order granting in part the Junior Theatre's motion to quash a subpoena served on it by Valenti. Within this order, the court rejected an argument advanced by Valenti that a funding provision within a contract between the City and the Junior Theatre "make[s] the theatre's records 'public records.'"

4

III.

*The Bench Trial*

In February 2021, the trial court held a bench trial to resolve the parties' remaining disputes over records the City either had not produced or had produced with redactions. In a final statement of decision, the court ruled the City's redactions and withholding of records were legally justified. The court also found, among other things, that Valenti "filed the instant lawsuit[ ] before the City officially closed NextRequest No. 17-2567 [the second request]," and that "[d]iscovery resulted in the production of records beyond those sought by the First Request and Second Request." After ruling in favor of the City on Valenti's first cause of action, the court found that Valenti's cause of action for declaratory relief was moot as "[a]ll matters have been decided under the [ ]PRA claim." In August, the trial court entered judgment in favor of the City and against Valenti. Valenti did not seek review of the judgment.

IV.

*Valenti's Motion for Attorney's Fees and Litigation Costs as the Prevailing Party in the PRA Litigation*

Valenti subsequently filed a memorandum of costs in which he sought reimbursement of $4,114.67 in litigation costs. He also filed a motion requesting an award of $250,000 in attorney fees, consisting of $200,000 in incurred fees enhanced by a multiplier of 1.25.[2] Relying on *Sukumar v. City of San Diego* (2017) 14 Cal.App.5th 451 (*Sukumar*) and *San Diegans for Open Government v. City of San Diego* (2016) 247 Cal.App.4th 1306 (*San Diegans*

---

[2]    When Valenti filed his motion, the provision of the PRA that authorized attorney's fees and costs was section 6259. This provision, as recently renumbered, is now section 7923.115.

*for Open Government*), superseded by statute on other grounds as stated in *In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 128, Valenti argued that although he had not obtained a judgment against the City, his lawsuit had caused the City to produce two categories of records it would not otherwise have produced in response to his original requests, making him a prevailing party entitled to an award of attorney fees.

The first category of records consisted of 10 pages of e-mails[3] that Valenti claimed were responsive to his first request because they fell within the date range of January 1, 2016 and July 28, 2017, and they "mentioned" the Junior Theatre and/or two of the individuals, and one of the law firms, specified in the first request. Valenti asserted the e-mails had been produced by the City in September and October of 2018, "in response to discovery [he] propounded[.]" He claimed his lawsuit caused the City to disclose the e-mails because the production occurred at least "a year after [the City had] closed its file for the First Request" and was made in response to his discovery requests.

---

[3] These e-mails were submitted as "Exhibit 'I' " to Valenti's fee motion. They were Bates-numbered COSDPROD-000018, COSDPROD-000249, COSDPROD-000250, COSDPROD-000251, COSDPROD-001249, COSDPROD-001250, COSDPROD-002781, COSDPROD-002782, COSDPROD-002783, and COSDPROD-003293. These 10 pages consisted of five e-mail chains with a number of different recipients and covering various topics. Four of the e-mail chains mentioned the Junior Theatre. One of them included Deputy City Attorney Morrison as a recipient, but it did not also "mention" the Junior Theatre as required to meet the parameters of the first request. (In his opening brief on appeal, after listing the foregoing *10* pages of Bates-numbered e-mails, Valenti refers to these documents as "*seven* pages of records[.]" (Italics added.) We presume he means to say "10" pages of e-mails rather than "seven.")

6

The second category of records consisted of "responsive public records" that Valenti said he had received "directly from [the Junior Theatre] via subpoena[.]" Valenti argued the City's contract with the Junior Theatre gave the City constructive possession over the theater's records, and that the City therefore should have produced the theater's records in response to his PRA requests. He further argued that because he instead "had to obtain responsive public records directly from [the Junior Theatre] via subpoena," he was a prevailing party entitled to an award of attorney's fees.

Valenti's motion was supported in part by the declaration of his counsel, Cory Briggs. Briggs averred that the City had produced 4,006 pages of documents in September and October of 2018. The 10 pages of e-mails identified in the motion were "documents produced in response to discovery that are responsive to [Valenti's] first request but that were not disclosed prior to the filing of this lawsuit." Although the e-mails themselves were attached to Briggs's declaration, the discovery requests that assertedly prompted the City to produce them were not. Briggs also averred that he "had to obtain responsive public records from [the Junior Theatre], which resisted the subpoena and triggered lots of law and motion, because the City did not contact [the theater] for responsive records before or after this lawsuit was filed." However, he did not describe the subpoena or the records any further, and neither the subpoena nor the records produced by the theater were attached to Briggs's declaration or otherwise submitted in support of the motion.

## V.

*The City's Opposition to Valenti's Fee Motion and Its Motion to Strike or Tax Valenti's Cost Memorandum*

The City opposed Valenti's fee motion and moved to strike or tax his costs. The City claimed Valenti was not entitled to fees or costs because he had failed to demonstrate that his lawsuit caused the City to produce public records it would not otherwise have produced in response to his PRA requests.

With regard to the first category of records Valenti claimed the City produced as a result of his lawsuit—the 10 pages of e-mails—the City argued it was not enough for Valenti to simply show they were produced after he filed his complaint. Rather, he had to show the production was substantially motivated by the litigation. Valenti failed to meet this burden, the City argued, because he filed his suit prematurely. At the time Valenti filed his complaint, he "had yet to inform the City which records he believed were . . . wrongfully withheld under his [f]irst [r]equest," and the City "was still locating records responsive to the [s]econd [r]equest." The City further argued that if Valenti had cooperated with the City to refine his requests instead of "rushing to sue," he would have received the e-mails in the ordinary course. After filing his complaint, Valenti "failed to obtain an order directing the City to produce even one withheld document." Given these facts, the City argued, the necessary causal link between Valenti's litigation and its production of the e-mails was missing.[4]

---

[4] In addition to challenging whether the litigation caused the City to turn over the 10 pages of e-mails, the City also argued Valenti could not be said to have prevailed in the litigation on the basis of a production as "minimal" as the e-mails.

8

As for the second category of records Valenti claimed the lawsuit caused the City to produce—documents Valenti received from the Junior Theatre in response to a subpoena—the City argued the trial court had already ruled Valenti's theory of constructive possession lacked merit when it granted in part the Junior Theatre's motion to quash the subpoena. As a result, Valenti had no remaining basis for claiming the City was obligated to produce these documents in response to his PRA requests.

## VI.

*The Trial Court's Ruling Denying Valenti's Fee Motion and Granting the City's Motion to Strike or Tax Costs*

In a February 2022 minute order, the trial court denied Valenti's motion for attorney fees and granted the City's motion to strike or tax Valenti's cost memorandum. The court explained that under *Sukumar, supra,* 14 Cal.App.5th at page 464, a plaintiff claiming to have prevailed in PRA litigation must show "a substantial causal relationship between the lawsuit and the delivery of the information." It further explained that proof of a mere temporal connection between the filing of the litigation and the production of records is not a sufficient showing.

The trial court ruled that Valenti failed to demonstrate a "sufficiently 'substantial causal relationship'" between his filing of the complaint and the City's production of records. It found the cases Valenti relied on to be distinguishable. It explained that in *Sukumar*, the defendant had repeatedly represented to the plaintiff as well as the court that it had produced all responsive records and nothing more would be forthcoming. It was only after the court ordered certain depositions that the defendant produced additional, responsive public records. And in *San Diegans for Open Government*, the

9

plaintiff filed its action only after confirming the defendant would not produce any responsive public records at all.

Here, by contrast, the trial court explained, the City made no such repeated representations. Rather, it sought to work with Valenti after he objected to closing the first request. It was Valenti who "did not seek to clarify or work with the City on his first request" and instead "submitted a second more comprehensive request." He then filed his lawsuit without waiting for the City to complete its search. The court further explained that unlike *Sukumar*, "[n]o court[-]ordered discovery led to the production of the documents [Valenti] claim[ed] should have been produced in response to the original requests." For these reasons, the required causal relationship between the litigation and the City's production was missing.

## DISCUSSION

Relying once again on *Sukumar* and *San Diegans for Open Government*, Valenti claims the trial court erred when it denied his motion for attorney fees and granted the City's motion to strike his memorandum of costs. Here, we conclude Valenti fails to establish an abuse of discretion. As a result, we affirm the court's order.

### I.

### *Relevant Legal Principles*

A.    *The PRA*

The PRA was enacted to "increas[e] freedom of information by giving members of the public access to information in the possession of public agencies." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425.) It provides that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 7921.000; *Riskin v. Downtown Los Angeles Property Owners Assn.* (2022)

10

76 Cal.App.5th 438, 444 (*Riskin*).) The PRA also requires courts to award costs and reasonable attorney's fees "[i]f the requester prevails in litigation filed pursuant to [the PRA]." (§ 7923.115.) This encourages "members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure." (*Filarsky*, at p. 427.)

"In PRA litigation, the plaintiff may be a prevailing party even though the court did not enter judgment in his or her favor." (*Sukumar*, *supra*, 14 Cal.App.5th at p. 463.) A plaintiff on the losing side of a judgment may still be eligible for fees under a "catalyst theory." (*Id.* at p. 464.) " ' "A defendant's voluntary action induced by plaintiff's lawsuit will still support an attorney[ ] fee award on the rationale that the lawsuit spurred defendant to act or was a catalyst speeding defendant's response." [Citation.] . . . "If plaintiff's lawsuit 'induced' defendant's response or was [a] 'material factor' or 'contributed in a significant way' to the result achieved then plaintiff has shown the necessary causal connection." ' " (*Id.* at p. 463; see also *San Diegans for Open Government, supra*, 247 Cal.App.4th at pp. 1321–1322.) "Additionally, if a plaintiff succeeds in obtaining only partial relief, the plaintiff is entitled to attorney fees unless the plaintiff obtains results 'that are so minimal or insignificant as to justify a finding that the plaintiff did not [in fact] prevail.' " (*Sukumar,* at p. 464.)

"[R]ecovery under the catalyst theory [thus] turns on causation. The question whether the plaintiff prevailed, in the absence of a final judgment in his or her favor, is really a question of causation—the litigation must have resulted in the release of records that would not otherwise have been released." (*Sukumar, supra*, 14 Cal.App.5th at p. 464.)

11

Under the catalyst theory, however, correlation does not equal causation. As one court stated, "[m]ore than *post hoc, ergo propter hoc*[5] must be demonstrated." (*Motorola Communication & Electronics, Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1345.) "[A] PRA plaintiff does not qualify as a prevailing party merely because the defendant disclosed records sometime after the PRA action was filed. There must be more than a mere temporal connection between the filing of litigation to compel production of records under the PRA and the production of those records." (*Sukumar*, *supra*, 14 Cal.App.5th at p. 464.) Rather, "[t]he litigation must have been the motivating factor for the production of documents. [Citations.] The key is whether there is a substantial causal relationship between the lawsuit and the delivery of the information." (*Ibid.*)

In *Sukumar*, this court reversed a trial court order denying a plaintiff's motion for attorney fees under the PRA. (*Sukumar*, *supra*, 14 Cal.App.5th at pp. 464–468.) The plaintiff had requested public records from the City of San Diego after being charged with municipal code violations stemming from neighbors' complaints about his use of his property. (*Id.* at pp. 454–457.) The City responded with a letter stating it would make responsive, nonexempt records available for the plaintiff's review, and that this was its "final response" to the plaintiff's request. (*Id.* at p. 457, italics omitted.) When the plaintiff's attorney sent an e-mail asking the City to confirm the scope of its search, the City responded that City staff had searched " 'as broadly and as thoroughly as possible' " and " 'no records [were] being withheld entirely.' " (*Ibid.*, italics omitted.) At an in-person meeting between

---

5     After this, therefore resulting from it. (Black's Law Dict. (11th ed. 2019) p. 1412, col. 1.)

12

the plaintiff's attorney and a City staff member, the staff member failed to tell the attorney that the City's search was ongoing and more responsive documents would be produced at a later date.  (*Id.* at pp. 457–458 & fn. 2.)

After several weeks of silence from the City, the plaintiff filed a petition for writ of mandate under the PRA.  (*Sukumar, supra,* 14 Cal.App.5th at p. 458.)  Within six months of the filing (specifically, in March 2016), after producing several hundred more responsive documents and e-mails, the City claimed it had produced all remaining documents of which it was aware.  (*Id.* at pp. 458–459.)  However, shortly after making this statement, the City produced 105 more responsive e-mails.  (*Id.* at p. 459.)

In the meantime, the plaintiff served the City with written discovery to which the City objected, requiring the plaintiff to file motions to compel. (*Sukumar, supra,* 14 Cal.App.5th at p. 459.)  At the motion to compel hearing, the City's attorney told the trial court the City had already " 'produced everything.' "  (*Ibid.,* italics omitted.)  The attorney even offered to provide a verification to that effect.  (*Ibid.*)  Rather than accept this offer, the court ordered the City to produce witnesses who could testify that the City had indeed produced all responsive public records.  (*Id.* at p. 460.)  In anticipation of the ensuing depositions, the City renewed its search and ended up locating and producing three more sets of documents responsive to the plaintiff's original PRA request.  (*Id.* at pp. 460–461.)

The trial court ultimately denied the plaintiff's writ petition after concluding all responsive documents had ultimately been produced and the delay in production was reasonable.  (*Sukumar, supra,* 14 Cal.App.5th at p. 461.)  The plaintiff then filed a motion for attorney fees, asserting the litigation was the catalyst for the City's production of a substantial amount of responsive public documents.  (*Id.* at pp. 461–462.)  The trial court denied the

13

motion, finding in part that the City " 'was not motivated by th[e] lawsuit to produce the documents.' " (*Id.* at p. 462.)

This court reversed. We held the trial court's finding that the City was not motivated by the lawsuit to produce responsive and material documents was not supported by substantial evidence. (*Sukumar, supra*, 14 Cal.App.5th at pp. 464–465.) We reasoned that in March 2016, the City "unequivocally claimed it had produced every responsive nonexempt document," and its attorney told the court it "had produced 'everything.' " (*Ibid.*) The City's attorney "even offered to say so under penalty of perjury, volunteering 'to provide a verification that we've produced everything' if the court desired." (*Ibid.*) We concluded: "In the face of the City's unequivocal assertion in March 2016 that it had already produced everything, the conclusion seems inescapable that but for [the plaintiff's] persistent demand for discovery and the court-ordered depositions that resulted from those efforts, the City would not have produced any of the [subsequently-produced] responsive documents." (*Id.* at p. 465.)

In *San Diegans for Open Government, supra*, 247 Cal.App.4th 1306, the plaintiff submitted a PRA request to the City of San Diego seeking all e-mails pertaining to official city business sent to or from the personal e-mail account of then San Diego City Attorney Jan Goldsmith. (*Id.* at p. 1320.) The City refused to produce any e-mail communications, stating the e-mails in Goldsmith's personal account were not retained by the City and did not qualify as public records. (*Ibid.*)

After confirming the City would not produce any responsive records, the plaintiff filed a PRA action. (*San Diegans for Open Government, supra*, 247 Cal.App.4th at p. 1321.) The City claimed that after reading the complaint, it realized the plaintiff was seeking e-mails stored in the City's

14

own computer system. It then conducted a search and discovered over 900 pages of e-mails. (*Ibid.*)

The trial court entered judgment in favor of the plaintiff, reasoning the City's failure to produce records in response to the original PRA request was attributable to the City's failure to ask the plaintiff for clarification.[6] (*San Diegans for Open Government, supra*, 247 Cal.App.4th at p. 1321.) The court also granted the plaintiff's request for attorney's fees, "finding City disclosed public records as a result of the action and could have avoided litigation had it not improperly narrowed the request, but instead sought clarification." (*Ibid.*)

On appeal by the City, this court affirmed the fee award. We noted that the PRA defines " ' "[p]ublic records" ' " to include writings " '*retained* by any state or local agency.' " (*San Diegans for Open Government, supra*, 247 Cal.App.4th at p. 1321.) We further noted that the relevant standard of review required us to "accept the trial court's . . . choice of possible reasonable inferences that can be drawn from the evidence." (*Id.* at p. 1322.) We reasoned that in response to plaintiff's request, the City "claimed it did not

---

6      A third party subsequently petitioned this court for a writ of mandate on the ground the e-mails sought by the plaintiff were privileged. (See *League of California Cities v. Superior Court* (2015) 241 Cal.App.4th 976, 981–982.) We granted the petition and issued a writ of mandate directing the trial court to vacate its order requiring disclosure of the e-mails and to review all e-mails in camera to determine whether they were exempted from disclosure by the attorney-client privilege or attorney work product doctrine. (*Id.* at p. 995.) It appears that following remand, after considering the privilege claims, the trial court ordered production of only one e-mail. (See *San Diegans for Open Government, supra*, 247 Cal.App.4th at p. 1321 [noting the City's argument that "after the trial court ruled on its claimed privilege, it produced only one insignificant e-mail with the fate of other e-mails at issue in the prior action still undecided"].)

15

retain the requested documents without verifying the veracity of this statement." (*Ibid.*) We found this evidence sufficient to support inferences that the City improperly narrowed the PRA request, and that "the filing of the action motivated City to actually look for and produce the . . . e-mails." (*Ibid.*) As a result, we held that the trial court did not abuse its discretion when it found the plaintiff to be the prevailing party in the action.

B.    *Standard of Review*

The abuse of discretion standard of review applies to a ruling on a motion for attorney's fees (*Riskin*, *supra*, 76 Cal.App.5th at p. 445) as well as a motion to tax costs (*Berkeley Cement, Inc. v. Regents of University of California* (2019) 30 Cal.App.5th 1133, 1139). Under this standard of review, appellate courts will disturb a trial court's ruling only if " ' "a clear case of abuse is shown[.]" ' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.) The question on appeal is whether the challenged ruling " 'transgresses the confines of the applicable principles of law[.]' " (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.) A trial court's decision " ' " 'will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.' " ' " (*Riskin*, at p. 445.)

Whether a PRA action caused a government entity to produce public records so as to support recovery of fees and costs under a catalyst theory is a factual issue reviewed for substantial evidence. (*Pasadena Police Officers Assn. v. City of Pasadena* (2018) 22 Cal.App.5th 147, 167 (*Pasadena Police Officers Assn.*).) "An appellate court must defer to the trial court's determinations on the causation issue, unless there is no evidence to support the trial court's factual conclusion." (*Ibid.*) " 'The burden is on the

16

party complaining to establish an abuse of discretion[.]' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

II.

*Valenti Fails to Establish That the City's Production in Response to Discovery of 10 Pages of E-mails Responsive to His First Request Compels the Conclusion That He Prevailed in the Litigation*

Valenti first challenges the trial court's ruling on the ground that the City's production of the 10 pages of e-mails in response to his discovery requests during the litigation were sufficient to establish a substantial causal relationship between his lawsuit and the delivery of the records. His arguments on appeal are almost indistinguishable from the arguments he advanced in the trial court. He asserts that his first request "was deemed closed by the City prior to the filing of [his] lawsuit." In September and October 2018, the City produced 10 pages of e-mails[7] that "existed pre-lawsuit but were not disclosed to [Valenti] by the City except in response to discovery." (Italics and boldface omitted.) "Thus," he concludes, "had it not been for [his] lawsuit, those records would never have been produced by the City." He suggests that the facts of this case are like those of *Sukumar* and *San Diegans for Open Government* and compel reversal of the order denying his motion for fees and granting the City's motion to strike his cost memorandum.

The City responds that Valenti is merely relitigating the original factual issue on appeal when his real burden is to show there is no substantial evidence in the record to support the trial court's finding that he failed to demonstrate "a sufficiently 'substantial causal relationship between

---

[7]    See footnote 3, *ante*.

17

the lawsuit and the delivery of the information.' " The City further contends Valenti cannot meet his appellate burden because substantial evidence in the record supports the trial court's findings that Valenti filed his suit prematurely without working with the City or waiting for the City to complete its search. It argues *Sukumar* and *San Diegans for Open Government* remain distinguishable for the same reasons identified by the trial court and do not support reversal of the court's order.

We agree with the City. Under the standard of review that governs this appeal, we "defer to the trial court's determinations on the causation issue, unless there is no evidence to support the trial court's factual conclusion." (*Pasadena Police Officers Assn.*, *supra*, 22 Cal.App.5th at p. 167; see also *Shaw v. City of Santa Cruz* (2008) 170 Cal.App.4th 229, 279 [stating that when the trier of fact "has expressly or implicitly concluded that the party with the burden of proof failed to carry that burden and that party appeals," the question on appeal becomes "whether the evidence compels a finding in favor of the appellant as a matter of law"].)

Valenti, as the appealing party, therefore bears the heavy burden of establishing that there is an absence of evidence in the record to support the trial court's ruling. Rather than take on this burden, he merely reargues his trial court motion. This is not a strategy that can succeed on appeal, because the question this court must answer is different from the question that was presented to the trial court. We must determine not whether there is evidence in the record supporting Valenti's request for fees, but whether there is an *absence* of evidence supporting the trial court's rejection of the fee request. (See *In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 230 ["The showing on appeal is insufficient if it

18

presents a state of facts that affords only an opportunity for a difference of opinion."].)

Moreover, we agree with the City that substantial evidence supported the trial court's conclusion that Valenti failed to prove that his litigation was a sufficiently substantial cause of the City's production of records responsive to the first request to warrant a determination that he had prevailed in the litigation. Under *Sukumar*, determining whether a particular action was the cause of a government entity's decision to produce responsive public records is a matter of determining whether the agency would not have produced the records "but for" the action. (See *Sukumar*, *supra*, 14 Cal.App.5th at p. 465.) "[A] mere temporal connection between the filing of litigation to compel production of records under the PRA and the production of those records" does not suffice. (*Id.* at p. 464.)

Here, the trial court's conclusion that Valenti failed to demonstrate a sufficiently substantial causal relationship between his lawsuit and the delivery of the e-mails was both consistent with and supported by the evidence in the record before it. Valenti's showing was limited to establishing that the City produced e-mails responsive to his first request after he filed his lawsuit and served discovery on the City. This was tantamount to relying on the "mere temporal connection between the filing of litigation . . . and the production of those records" that *Sukumar* deemed insufficient. (See *Sukumar*, *supra*, 14 Cal.App.5th at p. 464.)

Consistent with the "but-for" causation test articulated in *Sukumar*, the trial court appropriately focused on facts relevant to determining whether the e-mails the City produced in discovery "would not have been obtained otherwise." The court reasoned, in part, that "even though the City may have closed the first PRA request prematurely, the City sought

19

to work with Plaintiff regarding his objections. Plaintiff did not seek to clarify or work with the City on his first request and instead submitted a second more comprehensive request. Then, Plaintiff filed his lawsuit without working with the City or waiting for the City to complete its search."

The trial court's analysis was amply supported by the documentation relating to the City's processing of Valenti's requests. This documentation showed that after Valenti objected to the City's September 14, 2017 decision to close his first request, telling the City "there are numerous documents known to me . . . which you have failed to produce," a City staff member responded to him the next day and asked him to "please let us know what [the referenced responsive documents] are." There was no recorded response from Valenti. Valenti's second request, submitted to the City on September 19, encompassed a much broader time frame than the first request and sought records relating to topics that were not identified in the first request. The court's finding that Valenti did not "seek to clarify or work with the City on his first request and instead submitted a second more comprehensive request" was supported by this evidence. Moreover, this evidence tended to refute the conclusion that the City would not have produced the e-mails but for the litigation. (See *Sukumar*, *supra*, 14 Cal.App.5th at p. 464.)

Further, as the City persuasively argues, *Sukumar* and *San Diegans for Open Government* are distinguishable and do not establish that the trial court erred. In *Sukumar*, the City "unequivocally" confirmed multiple times, including in a representation by its counsel to the superior court judge, that it had produced "*everything* and there was nothing more

to produce." (*Sukumar*, 14 Cal.App.5th at pp. 464, 465–466.) It was only when the judge ordered the City to produce witnesses to testify to the absence of additional records that the City renewed its search. The City then discovered and produced a critical e-mail, five photographs of the plaintiff's property, and 146 pages of additional responsive e-mails. (*Id.* at pp. 460–461.) It was on the basis of these undisputed facts that we found it "inescapable that but for [plaintiff's] persistent demand for discovery and the court-ordered depositions that resulted from those efforts, the City would not have produced any of the above-mentioned responsive documents." (*Id.* at p. 465.)

Here, by contrast, there were no representations by the City, unequivocal or otherwise, that it was unwilling or unable to produce more records responsive to Valenti's first or second requests. No court order was issued compelling the City to confirm the thoroughness of its search for responsive public records. Indeed, the trial court found " '[d]iscovery resulted in the production of records **beyond** those sought by' the PRA requests," which was an indication the City was voluntarily erring on the side of overproduction. In short, *Sukumar* involved materially distinct facts and does not establish that the trial court's resolution of the causation issue in this case was unwarranted.

In *San Diegans for Open Government*, unlike this case, the plaintiff had prevailed on its fee motion under a catalyst theory after the trial court found the City disclosed public records "as a result of the action." (*San Diegans for Open Government*, *supra*, 247 Cal.App.4th at p. 1321.) We were required to defer to this finding so long as we could determine that it reflected the trial court's "choice of possible reasonable inferences that can

21

be drawn from the evidence." (*Id.* at p. 1322.) We found the trial court's decision adequately supported by evidence that prior to the litigation, the City "claimed it did not retain the requested documents without verifying the veracity of this statement," even though it knew private e-mails stored on its server were public records. (*Ibid.*) We concluded this evidence "suggest[ed] the filing of the action motivated [the] City to actually look for and produce the private e-mails[.]" (*Ibid.*)

In short, *San Diegans for Open Government* is procedurally and factually inapposite. Procedurally, it stands for the unremarkable proposition that the substantial evidence test is highly deferential and requires a trial court's finding to be upheld on the basis of a mere inference. In this case, as the City correctly points out, Valenti did not prevail in the trial court, so "the deference cuts the opposite way." In other words, *San Diegans for Open Government* does *not* stand for the proposition that a trial court's prevailing party determination must be *reversed* on the basis of a comparably minimal amount of evidence favoring the plaintiff.

Factually, *San Diegans for Open Government* is materially distinguishable from this case. Here, unlike *San Diegans for Open Government*, the City's last word to Valenti about his first request was not an unequivocal claim that the City had not retained the requested documents. Instead, the City asked Valenti for guidance after he claimed its initial search failed to produce all responsive records, which suggested it was willing to take another look. Unlike *San Diegans for Open Government*, it was Valenti who ended the dialogue, not the City.

22

For all of these reasons, Valenti fails to persuade us that the City's production during discovery of the 10 pages of e-mails responsive to his first request was evidence compelling the conclusion he prevailed in his PRA action.[8]

III.

*Valenti Fails to Establish That Evidence the Junior Theatre Produced Records in Response to Subpoena Compels the Conclusion He Prevailed in the Litigation*

Valenti also seeks reversal of the trial court's order on the ground that he prevailed in the PRA litigation to the extent he succeeded in obtaining public records from the Junior Theatre in response to a subpoena. He argues that because he "obtained responsive public records by subpoena in this lawsuit," and "because the City never attempted to obtain those records itself despite having ownership and constructive possession via contract, this lawsuit resulted in the disclosure of responsive records."

Valenti's argument fails for two reasons. First, he cites no evidence in the record establishing that the documents he assertedly received from the Junior Theatre qualified as public records or were responsive to either of his PRA requests. Without evidence he originally requested public records he later received as a result of the litigation, he can hardly be deemed a "requester" who "prevail[ed] in litigation filed pursuant to [the PRA]." (§ 7923.115, subd. (a).) Valenti's failure to identify such evidence results in

---

[8] Based on our resolution of Valenti's first challenge to the trial court's order, we need not and do not reach the City's alternative argument that the 10 pages of e-mails were too minimal or insignificant to justify a finding that he prevailed. (See *Riskin, supra*, 76 Cal.App.5th at p. 447.)

23

the conclusion he has not met his appellate burden of showing the trial court's ruling was erroneous.

Second, the fundamental premise of his argument—that the City was contractually obligated to produce records held by the San Diego Junior Theatre—was rejected by the trial court in a discovery order issued prior to trial. The court's ruling on the matter became final upon entry of judgment. Valenti failed to seek review of the judgment and cannot collaterally attack the ruling now. (See *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 387 [any challenge to a discovery order must be made on appeal from a final judgment]; *Estate of Buck* (1994) 29 Cal.App.4th 1846, 1854 [a litigant "may not collaterally attack a final judgment for nonjurisdictional errors"].)

## DISPOSITION

The order is affirmed. The City is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.

24

Filed 8/8/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MATT VALENTI,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>    Defendant and Respondent. | D080133<br><br><br>(Super. Ct. No. 37-2017-00044069-CU-MC-CTL)<br><br><br>ORDER GRANTING REQUEST FOR PUBLICATION |

THE COURT:

The opinion in this case filed July 18, 2023 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

O'ROURKE, Acting P. J.

Copies to: All parties